UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------X
                               :
ALICIA GONZALEZ,               :
                               :
        Plaintiff,             :
                               :
        v.                     :
                               :     No. 3:07CV435(EBB)
CITY OF BRIDGEPORT ET AL,      :
                               :
        Defendants.            :
                               :
-------------------------------X
```

<u>RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

This action arises out of the eviction of Plaintiff Alicia Gonzalez from her apartment by her landlord, Defendant John Delgado, and three Bridgeport police officers, also defendants in this case. The plaintiff has brought claims under 42 U.S.C. § 1983, alleging that the defendants violated her constitutional rights. The plaintiff has also asserted claims under Connecticut General Statutes § 47a-43 <u>et seq.</u>, the Connecticut Unfair Trade Practices Act ("CUTPA"), codified at Connecticut General Statutes § 42-110 <u>et seq.</u>, the Connecticut State Constitution, and state tort law. The plaintiff now moves for partial summary judgment against defendant Delgado on Counts One, Two and Five of her First Amended Complaint.[1] The plaintiff also requests a hearing on

---

[1]The court understands that the claims against the other defendants have settled, pending approval of the Bridgeport City Council. Plaintiff shall notify the court of the action of the Council with respect to the settlement.

damages and attorney's fees.  For the following reasons, the motion (Doc. No. 49.) is GRANTED.

<u>FACTUAL BACKGROUND</u>

Plaintiff Gonzalez claims she was unlawfully and forcibly removed from her apartment by the defendants.  Gonzalez alleges that the defendants violated the state summary process eviction statutes when they evicted her without first obtaining an execution of eviction from the clerk of the housing court and that the defendants behaved unlawfully in failing to use a state marshal to remove Gonzalez and her possessions from the apartment as required by the summary process statutes.  <u>See</u> Conn. Gen. Stat. § 47a-42.  With minor exceptions, the following facts are not in dispute.[2]

In June of 2006, plaintiff Gonzalez and defendant Delgado entered into a lease for an apartment located at 1274 Howard Avenue in Bridgeport, Connecticut.  Under the terms of the lease, Gonzalez was to pay Delgado monthly rent of $920.  Shortly thereafter, Gonzalez and her six-year-old son moved into the premises.

Gonzalez' rent payment for October 2006 was short by $10.  In early November, Delgado met with personnel from the State Marshal's office to discuss the steps required to evict a tenant under the

---

[2]Defendant Delgado has not filed a statement of material facts as required by Local Rule 56(a)(2).  In Delgado's Response to Plaintiff's Motion for Summary Judgment, a two-page document that does not cite any legal authority, he claims to identify two or three areas in which there is a factual dispute.  These areas will be addressed in the following discussion.

state summary process eviction statutes. On November 13, 2006, at Delgado's request, the marshal served a notice to quit the premises on Gonzalez. On November 20, 2006, a summons and complaint were served on Gonzalez. Gonzalez filed an answer and a trial was scheduled for December 8, 2006, in the Housing Session of the Connecticut Superior Court. Because Gonzalez did not receive notice of the trial until the afternoon of December 8, she failed to appear and a default judgment was entered against her. On December 12, 2006, after receiving notice of the judgment against her, Gonzalez telephoned the office of the clerk at the housing court to inquire about the effect of the judgment. She was told that the next step in the eviction process would be for the marshal to serve her with an execution of eviction informing her of the date by which she would be required to leave the apartment.

On December 15, 2006, Delgado met defendant police officer Jose Sepulveda on the street. Delgado and Sepulveda were acquainted with each other because they had worked together previously. Delgado told Sepulveda that he was attempting to evict a tenant and showed the officer the notice of judgment he had received from the housing court.[3] Sepulveda and Delgado then

---

[3]The notice informed Gonzalez that she "may be evicted from the premises . . . after 5 days from the Date of Judgment" and that she could ask the court to delay her eviction if, within five days of the judgment, she deposited with the court the full amount of the arrearage she owed to her landlord and applied for a stay of execution. (Pls.' R. 56 Statement, Ex. F.) Gonzalez did not do either of these things. The language in the judgment

arranged to meet with the other defendant police officers at 1274 Howard Avenue. When they arrived at the premises, the officers knocked loudly on the door and called to Gonzalez. Gonzalez, who was in the shower when she heard the pounding on the door, eventually answered the door wearing a towel. The officers then showed Gonzalez the notice of judgment and told her that she needed to leave the apartment because Delgado wanted to evict her. Gonzalez informed the defendants that she had been told by the housing court that she would receive another document (the execution) before she could be evicted, and she pleaded with the defendants to allow her to stay in the apartment because she had nowhere else to live. Delgado, however, insisted that she leave immediately.

The defendants told Gonzalez to pack her belongings. The officers entered the apartment and defendant Sepulveda followed her from room to room as she packed. While Gonzalez packed, Delgado changed the lock on the door of the apartment. When Gonzalez had packed all the belongings that would fit into her car, she drove away to pick up her son, who had been at school. Shortly after she left, two employees from Colortyme Company arrived and told the defendants that they wished to repossess two television sets that Gonzalez had rented. The defendants allowed access to the

<hr>

apparently led the defendants to believe that she could therefore be evicted whenever Delgado wished.

4

apartment so that the sets could be removed.  The defendants then left the premises and Delgado locked the door.

Gonzalez was forced to leave her home late on a Friday afternoon and was unable to contact the housing court until the following Monday.  As a result, she and her son spent the weekend without a home.  On Monday, Gonzalez was referred by the housing court to the Bridgeport police, who, upon learning that the defendants had evicted Gonzalez without obtaining an execution of eviction, directed Delgado to allow Gonzalez to return to the apartment.

## DISCUSSION

1.  Summary Judgment Standard

The standard for summary judgment is well established.  A moving party is entitled to summary judgment if it demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," while an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Konikoff v. Prudential Ins. Co. of America, 234 F.3d 92, 97 (2d Cir. 2000). Upon motion, and following adequate time for discovery, Rule 56(c) requires that summary judgment be entered against a party "who

5

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any."  Fed R. Civ. P. 56(c).  The evidence of the non-moving party is to be believed, Anderson, 477 U.S. at 255, and "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  However, the non-movant may not rest upon the mere allegations or denials of its pleading, see Fed R. Civ. P. 56(e), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Instead, the non-moving party "must offer some hard evidence showing that its version of the events is not wholly fanciful."  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

2.  Conn. Gen. Stat. § 47a-43 et seq. (Count One)

Connecticut General Statutes § 47a-43(a), the entry and detainer statute, provides for a cause of action against a defendant who

(1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having

6

made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession . . .

In order to prevail under the statute, "it must be shown that [the tenant] was in actual possession at the time of the defendant's entry." Fleming v. City of Bridgeport, 935 A.2d 126, 137 (Conn. 2007) (quoting Berlingo v. Sterling Ocean House, Inc., 523 A.2d 888, 890 (Conn. 1987)). The purpose of the statute is to "prevent self-help on the part of landlords seeking to recover possession of the premises and to avoid the costs of the disturbances to the public that can result therefrom." Id. (citing Orentlicherman v. Matarese, 121 A. 275, 276 (Conn. 1923)); see also id. (quoting Orentlicherman, 121 A. at 276) ("Section 47a-43 was made to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means.")

Gonzalez was clearly in actual possession of her apartment when she was evicted. By using police officers to remove Gonzalez from the apartment and by changing the lock after Gonzalez had left the apartment, Delgado violated the statute because he was not authorized to remove her at that time or in that manner. See Statewide Parking Services, Inc. v. City of Hartford, 16 Conn. L. Rptr. 360 (Conn. Super. Ct. 1996,) (citing Hartford Realization Co. v. Travelers Ins. Co., 167 A. 728 (Conn. 1933)) (holding that a

landlord's use of uniformed police officers who ordered the plaintiff to leave the property satisfied the statute's "strong hand" requirement and constituted a forcible detainer), aff'd, 693 A.2d 310 (Conn. 1997).

In his papers, Delgado offers, as defense, a claim that he acted in "good faith." He claims that he did not know that he was required to obtain an execution of eviction and was not aware that self-help evictions are unlawful. He also claims that he relied on the directions of the police officers who assisted him. However, Delgado has not cited any legal authority suggesting that a good faith mistake is a defense to liability under § 47a-43(a). The court does not believe that any such defense exists. See Singh v. Capobianco, No. CVH 9210-4417, 1992 WL 389828 at *2 (Conn. Super. Ct. Nov. 9, 1992) (holding that "defendant's reliance on the advice of the police officer is unavailing" and that after "[d]efendant violated the entry and detainer statute[,] he cannot now hide behind an officer's erroneous interpretation of the law as a defense").

Delgado also suggests that there is a disputed issue of fact as to whether he actually entered the apartment. Taking into consideration the undisputed facts that the police officers who assisted Delgado entered the apartment and that Delgado changed the lock, the court concludes that this claimed factual dispute is not material and that Delgado's actions satisfied all the elements of

the statute.

The court therefore grants the plaintiff's motion for summary judgment as to Count One.

3.  <u>Connecticut Unfair Trade Practices Act (Count Two)</u>

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business," Conn. Gen. Stat. § 42-110b, and provides for a cause of action by persons who have suffered losses as a result of unfair trade practices, <u>id.</u> § 42-110g. A "violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." <u>Daddona v. Liberty Mobile Home Sales, Inc.</u>, 550 A.2d 1061, 1066-67 (Conn. 1988) (citing <u>Sprayfoam, Inc. v. Durant's Rental Centers, Inc.</u>, 468 A.2d 951 (Conn. 1983), and <u>Web Press Services Corp. v. New London Motors, Inc.</u>, 203 Conn. 342, 355, 525 A.2d 57 (1987)). The Connecticut Supreme Court has held that Connecticut General Statutes § 47a-43, the entry and detainer statute, "uphold[s] the long-standing public policy against proceeding by way of self-help remedies when evicting a tenant," and that a landlord who evicts a tenant in violation of § 47a-43 therefore violates CUTPA. <u>Id.</u> at 1068.

Delgado's papers filed in opposition to Gonzalez' motion contain no argument that the unlawful eviction he performed did not satisfy all the elements of a CUTPA violation. Delgado's argument

that he acted in good faith is unavailing with respect to the alleged CUTPA violations because the Connecticut Supreme Court has held that "the subjective good faith of one who has in fact performed an unfair or deceptive act is not a defense to a CUTPA violation." Id. (quoting Eamiello v. Liberty Mobile Home Sales, Inc., 654, 546 A.2d 805, 822 (Conn. 1988)).

The court therefore grants the plaintiff's motion for summary judgment as to Count Two.

3. Section 1983 (Count Five)

A private party acts "under color of law," and may be subject to liability under 42 U.S.C. § 1983, "if there is 'such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself.'" Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308, 312-13 (2d Cir. 2003) (quoting Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 295 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974))). In an earlier ruling denying Delgado's motion to dismiss, the court held that, due to the extensive involvement of the police officers in the eviction, Gonzalez had properly alleged that Delgado had acted "under color of law" for the purposes of bringing a claim under § 1983. (Ruling on Defendant Delgado's Motion to Dismiss (Doc. No. 31).)

A plaintiff suing under § 1983 must show that he or she was

deprived of a right guaranteed by the United States Constitution or by federal law. <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 150 (1970). Gonzalez claims that she was subjected to an unreasonable seizure of her person and property in violation of the Fourth Amendment and that she was deprived of property without due process of law in violation of the Fourteenth Amendment Due Process Clause.

In <u>Soldal v. Cook County</u>, 506 U.S. 56 (1992), the Supreme Court held that the plaintiffs in that case, having claimed that they were victims of an extrajudicial eviction from their trailer home by their landlord and a group of sheriff's deputies, had alleged facts sufficient to establish a violation of the Fourth Amendment. Gonzalez' claims are sufficiently similar to the facts of <u>Soldal</u> for the court to conclude the evidence she has presented in support of her summary judgment motion establishes that the defendants violated the Fourth Amendment. Delgado asserts that there is a factual dispute about whether he himself, as opposed to the police officers, actually entered the apartment. However, there is undisputed evidence that Delgado insisted to the police officers that Gonzalez be removed from the apartment after she asked the defendants to allow her to stay for another night; there is undisputed evidence that Delgado changed the lock so that Gonzalez could not re-enter the apartment; there is undisputed evidence that Officer Sepulveda, acting on behalf of Delgado, remained inside the apartment for approximately three hours; and

there is undisputed evidence that Delgado allowed the Colortyme employees to enter the apartment. (See Pls.' R. 56 Statement, ¶¶ 14, 17, 20.) In view of this evidence, it is apparent that Delgado, together with the other defendants, conducted a "seizure" within the meaning of the Fourth Amendment, regardless of whether or not he himself entered the apartment.

With respect to Gonzalez' Fourteenth Amendment claim, Gonzalez argues that the defendants deprived her of a property interest in the apartment without providing her with sufficient notice and an opportunity to be heard. "It is . . . well established that possessory interests in property invoke procedural due process protections." Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (citing Fuentes v. Shevin, 407 U.S. 67, 87 (1972)). Gonzalez argues that the process to which she was entitled is determined by the state summary process statute. She argues that the defendants, including Delgado, violated her due process rights when they evicted her without obtaining an execution of eviction and without obtaining the services of the state marshal to perform the eviction as required by Connecticut General Statutes § 47a-42(a) and (b).

Delgado does not appear to dispute that the defendants' failure to comply with state law constituted a violation of due process. The court is inclined to agree with the plaintiff that a procedure in which a tenant is deprived of a possessory interest in real property without notice of execution is constitutionally

12

defective. Ownership rights for the purpose of procedural due process analysis are often created by state law. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Gonzalez had a legitimate expectation that she could remain in her home until the judgment was properly executed under the Connecticut statute. See Wolf-Lillie v. Kenosha County Sheriff, 504 F. Supp. 1 (D.C. Wis. 1979) (holding that execution of a writ of restitution that was invalid under state law because it had expired constituted a violation of the tenant's constitutional rights); overruled on other grounds by Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir. 1983); cf. Thomas v. Cohen, 304 F.3d 563, 576-80 (6th Cir. 2002) (holding that a summary eviction in violation of the state's procedural requirements violated the tenant's due process rights); Finberg v. Sullivan, 634 F.2d 50, 58 (3d Cir. 1980) (noting that a "judgment represents only an adjudication of . . . liability on a monetary debt, not a transfer . . . of title to any particular item" and that the "debtor retains a protectable interest in the use of her property during the pendency of the creditor's action").

In order to be deprived of her possessory interest in the apartment in which she lived, Gonzalez was entitled to some level of process that was more substantial than a decision based on an erroneous interpretation of the law by her landlord acting in concert with a group of police officers. See Abbott v. Latshaw, 164 F.3d 141, 149 (3d Cir. 1998) ("At the heart of [Fuentes v.

Shevin, 407 U.S. 67 (1972)] is the principle that it is not for law enforcement officers to decide who is entitled to possession of property . . . [The defendant's] curbside courtroom, in which he decided who was entitled to possession, is precisely the situation and deprivation of rights to be avoided.") See also United States v. James Daniel Good Real Prop., 510 U.S. 43, 53-54 (1993) (noting that an individual's "right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance" and that "the private interests at stake in the seizure of real property weigh heavily" in the balancing required by Mathews v. Eldridge, 424 U.S. 319 (1976)). The court therefore concludes that the defendants' actions in evicting Gonzalez violated due process.

Instead of disputing Gonzalez' claim that he violated her constitutional rights, Delgado raises what he characterizes as the "affirmative defense" that he acted in good faith. (Def.'s Response at 2; Def.'s Ans.) He claims that this was the first eviction he had conducted and that he was unaware of the requirements of the Connecticut entry and detainer statute. He also claims that he relied on the "directions" given by the police officers who helped him evict Gonzalez.

In Wyatt v. Cole, 504 U.S. 158 (1992), the Supreme Court held that a private party sued under § 1983 was not entitled to qualified immunity. However, the Court explicitly left unanswered

the question of whether a good faith defense would be available to such a defendant. Id. at 169. The Second Circuit has since held that a private defendant who attached a plaintiff's property pursuant to a state statute that was subsequently found to be unconstitutional could, as a defense, claim that he or she had relied in good faith on the statute. Pinsky v. Duncan, 79 F.3d 306 (2d Cir. 1996). Other courts of appeal have also held that good faith defenses are available in a number of contexts. E.g., Jordan v. Rothschild, 20 F.3d 1250, 1275-78 (3d Cir. 1994) (holding that private actors who invoke unconstitutional state attachment or replevin procedures are entitled to the defense that they relied in good faith on the state statute); Wyatt v. Cole, 994 F.2d 1113 (5th Cir. 1993) (same); Vector Research, Inc. v. Howard & Howard Attorneys P.C., 76 F.3d 692, 698-99 (6th Cir. 1996) (holding that a good faith defense was available in a Bivens action against private attorneys who conducted a search pursuant to an ex parte order that was found to be invalid); Clement v. City of Glendale, 518 F.3d 1090 (9th Cir. 2008) (allowing good faith defense for private towing company whose actions were valid under local law and who had no way of knowing about the lack of notice to the owner of the car that was towed).

In Pinsky, the Second Circuit analogized the plaintiff's § 1983 claims arising out of the enforcement of an unconstitutional statute to the common law tort of malicious prosecution. The court

held that the § 1983 plaintiff, like a plaintiff claiming malicious prosecution, bears the burden of proving that the defendant acted without probable cause, acted with malice and caused damage. Pinsky, 79 F.3d at 312. The Second Circuit defined probable cause as "any . . . combination of facts and proofs as may fairly lead the reasonable mind to the belief (and the person relying on it must believe) that . . . the prosecution or other suit ought to be successful." Id. (quoting Joel P. Bishop, Commentaries on the Non-Contract Law § 239, at 95 (1889)). Malice "may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." Id. at 313 (quoting 52 Am. Jur. 2d Malicious Prosecution § 152, at 277-78 (1970)).

Delgado has provided no explanation of why, after speaking with personnel at the housing court and the state marshal's office, he believed that it was not necessary to obtain an execution of eviction or why he thought that a self-help eviction would be permitted. In his deposition, he admitted that the marshal informed him that he "had to get an execution from the court" before he could forcibly remove Gonzalez from her apartment. (Depo. 24/9/2007 at 18 (Pl.'s R. 56 Statement, Ex. C).) He also testified that he nonetheless believed that the execution of eviction was not a mandatory step, but that it was an "optional . . . part of the moving process." (Id. at 19.) Similarly, he seems

16

to have testified that his failure to understand that only a marshal could forcibly evict a tenant was "my mistake." (Id.) He apparently thought that he could save money by removing Gonzalez and her possessions himself, rather than paying the marshal to execute the eviction. (Id.)

Insofar as Delgado claims that he simply did not understand the summary process statute, this case is very different from the above-mentioned cases involving good faith defenses. Unlike the defendants in those cases, Delgado has not claimed that he was relying on a statute or on a statement by someone authorized to inform him of the steps he was required to take in order to evict a tenant. Delgado claims, in essence, that, when he met the police officers and told them that he was attempting to evict a tenant from her home, he was simply ignorant of the law. It is unclear whether a good faith defense would be available to such a defendant. See Wyatt, 994 F.2d at 1120 ("[P]rivate defendants, *at least those invoking ex parte prejudgment statutes*, should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity.") (emphasis added); Pinsky.79 F.3d at 313 (citing Bishop, § 236, at 93-94) (noting that reliance on a lawyer's advice may negate an inference of malice); Goodnow v. Palm, 264 F. Supp. 2d 125, 134 (D. Vt. 2003) (citing Wyatt, 504 U.S. at 163-68) ("To establish such a [good faith] defense, [the

defendant] must demonstrate that it relied in good faith upon a presumptively valid law and neither knew nor reasonably should have known that it was violating [the plaintiff's] constitutional rights.")

Even assuming that the defense is available to Delgado, and viewing the evidence in the light most favorable to Delgado, the court can only conclude that Delgado was not acting in good faith, as that term has been defined in <u>Pinsky</u>. Delgado's mistake was not reasonable since it is not reasonable for landlords to evict their tenants without first understanding what steps are required by law. Delgado therefore lacked probable cause to proceed with the forcible removal. In addition, "malice may be inferred from the lack of probable cause." <u>Id.</u> (citing Bishop, supra, § 235, at 93 and W. Page Keeton et al., Prosser and Keeton On the Law of Torts § 120, at 895 (5th ed.1984)). Delgado has offered no facts, apart from his insistence that he made a "mistake," to rebut such an inference. Furthermore, the court believes that Delgado's unexplained failure to learn his rights as a landlord before forcibly removing a tenant from his or her home was to act with reckless disregard of his tenant's rights, thus establishing malice. Finally, because Gonzalez has established that she suffered damages as a result of the eviction, the court finds that the facts do not support Delgado's good faith defense.

Delgado also claims that he "relied upon the directions given"

by the police officers who assisted him in removing Gonzalez from the apartment. (Delgado Aff.)  First, the court notes that it is unclear from the cases that discuss good faith defenses whether reliance on a police officer's interpretation of the law could be reasonable in the same way that reliance, for example, on a statute or on the advice of an attorney is reasonable.  Moreover, the evidence does not support Delgado's claim that he evicted Gonzalez based on the officers' "directions."  Delgado has not presented any evidence that the police officers actually told him that he was allowed to evict Gonzalez.  Delgado testified at his deposition that he approached Officer Sepulveda and told him that he was "going through . . . an eviction" and that his tenant was "scheduled to be out [five days] after . . . the judgment." (Depo. 24/9/2007 at 44 (Pl.'s R. 56 Statement, Ex. I.)  He testified that, upon first meeting with the police officers, he asked them to accompany him to the house so that he could "make sure my utilities are all right." (Id. at 44.)  He testified that the officers told him he could check his utilities and that there was no further conversation. (Id. at 46-47.)  Delgado and the officers then drove to the apartment in separate cars and presumably had no further conversation until they had arrived at the apartment. (Id. at 48.)  Upon arrival, the officers again examined the judgment, but, according to Delgado, there was no further conversation before the officers knocked on the door. (Id. at 51.)

Delgado's affidavit, in which he claims to have relied on the directions of the officers, is therefore inconsistent with his deposition testimony, which makes it clear that no such directions or advice were provided by the officers. Delgado cannot rely on the affidavit in arguing that there is a disputed issue of material fact. See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled . . . that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.")

Furthermore, it is undisputed that the decision to remove Gonzalez was made by Delgado himself. Delgado brought with him to the apartment tools and a new lock so that he could lock Gonzalez out of the building.[4] When Gonzalez informed the officers that she believed that they could not remove her at that time and pleaded with them to allow her to remain in her home, the officers asked Delgado if he she could stay. Delgado however insisted that she leave.[5] Nowhere does Delgado claim that he first asked the

---

[4]The only consultation between Delgado and the officers of which there is any evidence is that Delgado told the officers that he had brought a new lock and tools so that he could change the lock. (Depo. 24/9/2007 at 62 (Pl.'s R. 56 Statement, Ex. J).) Delgado testified that the officers told him he could change the locks. (Id.)

[5]When Sepulveda was asked at his deposition about why he did not wait another day or two to find out whether it was proper to evict Gonzalez, he answered that he "asked Delgado if he would allow her to stay another day and [Delgado] said, 'You know, I

officers if he had a right to forcibly remove his tenant.  Even assuming that a good faith defense is available to a landlord who relied on the erroneous legal advice of a police officer in evicting a tenant, the evidence shows that Delgado did not receive any such advice.

The court therefore grants the plaintiff's motion for summary judgment as to count Five.

<u>CONCLUSION</u>

For the foregoing reasons, the motion (Doc. No. 49) is GRANTED.  The court notes that Counts Three and Six against defendant Delgado are still pending.  The court will not, as requested by the plaintiff, schedule a hearing on damages until the issue of liability under the pending claims have been resolved.[6]

SO ORDERED.

/S/Ellen Bree Burns, SUSDJ
ELLEN BREE BURNS, SENIOR JUDGE
UNITED STATES DISTRICT COURT

Dated at New Haven, Connecticut this 2nd day of September, 2008.

---

got this court thing.  I've waited a long time . . . I would like her out of the apartment.'"  (Depo. 10/10/2007 at 90 (Pl.'s R. 56 Statement, Ex. L).)

[6]Plaintiff shall inform the court whether she wishes to pursue her claims against defendant Delgado under Counts Three and Six.  If she intends to withdraw these claims, the court will schedule a hearing on damages with respect to the claims on which summary judgment has been granted.